You will call our last case of the day. Krieger v. Bank of America, number 17-1275. Mr. Freeman and Mr. Faulkner. Hang on for just one second while I get that set up. Good morning, Your Honors, and may it please the Court, my name is Brett Freeman and I represent the Plaintiff and Appellant, Brigham Krieger. I'd like to request three minutes for rebuttal. That's fine. The Truth in Lending Act provides numerous important protections to cardholders. Some of the most important protections involve unauthorized use of one's credit card. Unlike most billing errors, the Truth in Lending Act allows a victim of unauthorized use to provide notice through any reasonable mechanism, such as orally through a telephone call, and there's no time limit on when this notice must be provided. Were you to prevail, for example, on the 1666 claim, is there any additional benefit from proceeding with the 1643 claim? Well, Your Honor, the statute does provide for statutory damages of at least $500, but that amount can be increased in the case of a pattern or practice. And here we would set forth that there were at least three violations of the Truth in Lending Act. Two involving the unauthorized use protections, and one involving the Fair Credit Billing Act. And a number of violations related to Mr. Krieger could be relevant for determining whether or not that pattern or practice did exist. It is certainly possible that Your Honors could reverse and remand simply because of the 1643 violation for unauthorized use. How could we do that if the remedy that is provided, that particular statutory provision, only precludes the card issuer from suing the cardholder and not vice versa? Well, Your Honor, I don't believe that's an accurate statement. There is language in Third Circuit jurisprudence in Xer and also Sovereign Bank that talk about how 1643 does not impose liability on the card issuer. But if you go back and look at Sovereign Bank, that case shows that the liability they're talking about was the amount of the unauthorized usage. In Sovereign Bank, the card issuer, when a claim of unauthorized usage was made, was paying the merchants the additional funds that it could not recover from the consumer. And when they determined that there may have been some improper record keeping by the merchants, they went in and they asked for that funds back through an equitable indemnification argument. And the court said, well, no, you were never on it and you never had an obligation to pay the merchants those funds, so your equitable indemnification argument must fail. If we fast forward to Xer, a similar result happens. The unauthorized use in Xer took place over seven years. During that time period, the consumer was making payments on his statements regularly without reviewing them. And presumably, the credit card issuer was making payments to the merchants that were for the unauthorized usage. And this court simply said that you cannot come back seven years later and expect to reimburse that money that you were paying to the credit card company in which they were then paying to the merchant. There's nothing in the statute itself that says there's no obligation on the credit card issuer for unauthorized usage. Your complaint cites both 1643 and 1640 on this count. And there's no indication in either of those cases that 1640 was at issue. I understand correctly your claim to be not a right to reimbursement of the amount of over $50 under 1643, but that under 1640, you're arguing that there should be no liability at all because you're seeking to hold the issuer to its statutory obligation. You're seeking to hold the issuer to its statutory obligations not to impose liability by listing a charge on a statement above $50 without complying with the particular statutory requirements of 1643 as further expounded in the CFR and official statement. That's correct, Your Honor. I would say we are seeking to recover the $657 because as this matter progressed and Bank of America refused to recognize the unauthorized use, my client, who does have perfect credit, decided to pay that $657 rather than potentially file a declaratory judgment. But to be clear, you're seeking that under 1640 as actual damages. You're not seeking a right to reimbursement above $50 under 1643. Correct. Our claim arises solely from 1640, which does allow statutory damages, actual damages, which in this case we're saying is about $657, and costs and attorney's fees. 1643 is the violation that triggers the private right of action of 1640. In response to the question that 1643 only applies to ceilings on liability for card members as opposed to card issuers, your answer would be? Well, 1640 states that any creditor who doesn't comply with any requirement of this part, 1643 is part of the same section of the statute. So 1640 is the section that would always apply liability. So you need a tie-in to some provision you're saying is 1643, and what was the violation by the card issuer of 1643? So there's two, Your Honor. The first was when they were contacted in June and they were informed of unauthorized use, they had a choice that they could have made. They could have first decided to waive any right to recover those funds, or they could have conducted a reasonable investigation. Instead, they told my client he had to call back when he got his statement. The statement arrives in July, and at that point there is a charge on there for the entire amount of the unauthorized usage. So they attempted to collect the unauthorized usage without first conducting that reasonable investigation. Our second theory is that once they agreed to conduct an investigation during the July phone call, the reasonableness of the investigation was certainly suspect because the charge was affirmed, for lack of a better term, because Western Union provided three pieces of what I call business card information. Name, address, and email address. Items that I don't think people guard too closely. Isn't that just a billing error because the word billing error under the appropriate regulation is defined to include an unauthorized charge? And doesn't that bring you within that 60-day problem where you have to make a written submission about the billing error within 60 days that you first receive notice? Well, Your Honor, 1666, which is the Fair Credit Billing Act, does include unauthorized usage as a type of billing error. But 1643 and the regulation 1026.12 makes it clear that the protections provided for unauthorized usage in 1026.12 are independent of the Fair Credit Billing Act. So it's a whole separate scheme that you can use for protection. And one way to point that out, Your Honor, is that the Fair Credit Billing Act only applies to consumers. There's no protection at all for any other type of card user. 1643 and 1026.12 apply not just to consumers, but businesses or other card users. And that's very clear from the general comment to 1026.12b, which notes that this protection is an exception from the general rule that Regulation Z only applies to consumers. So I would say that 1643 and 1026.12 have to be independent of the Fair Credit Billing Act. It's explicitly stated in both 1026.12 and 1026.13, but also the different types of parties that are protected make that even clearer in our position. Why then would there be any need with an unauthorized charge, assuming if that were the right reading of the statute, to proceed by way of 1666 at all? I mean, it seems at least the notice provisions, the way you're reading them under 1643, allow for telephone notice, common in dealing with credit cards, as well as in writing, whereas 1666 requires the written submission of the complaint. Your Honor, I don't know specifically why they would include two different triggering mechanisms for unauthorized use protections. But the mechanisms are certainly different. Again, 1026.12 does specifically state oral notice is sufficient, and I agree 1026.13 does have a writing requirement. Perhaps one reason would just be that a consumer might have multiple errors on his bill, and it would just be easier to include all of those in one written billing notice error. In a situation where a charge remains on someone's statement for the entire duration of a 60-day period, it wouldn't be unreasonable to think that he or she may send in a written billing error. But that's our situation here, where we believe that once the charge was removed and then reinstated, that new 60-day window should either begin or it should have been told while the charge was removed. And we think 1643 is very important to ensure that there is that additional protection from unauthorized use. And additionally- I'm sorry, in considering the story of 1643 and whether it includes any right of a cardholder to bring suit, we also don't see any mention in the Azure or Sovereign Bank case of 1643, CFR 1026C. That is the right of cardholder to assert claims or defenses against card issuer. And then it goes on to describe certain situations when the cardholder can bring claims against the issuer if it hasn't resolved them with the vendor. Can you explain where subsection C fits into this scheme, and does that apply here, or does the record seem to indicate that your client attempted to resolve this with Western Union? I've struggled with 1026C as well, or 12C as well. And that provision seems to deal with claims, for instance, of defective products. The consumer would have a right to try and make right with the merchant of the defective product, but 1026.12C also gives them a right to instead forego dealing with the merchant altogether and to instead deal with the credit card issuer themselves. So I don't believe 1026.12C has any implication on this case whatsoever. That was certainly an issue of struggle I had, though, when briefing this case. But I think the clear reading is simply that that deals with defective products or otherwise claims that one might have against the merchant. My client did speak with Western Union on this case, like you mentioned. It was after Bank of America had already conducted its investigation. When he first spoke with Bank of America in June, he was told there was nothing they could do until he got a statement. The July statement came around. He was told there was nothing they could do because Western Union had already paid out the charge. He had no reason to doubt that at that time. However, once Bank of America stated that this was a verifiable charge, he did contact Western Union, and he actually found out that that statement made to him in July was an error. The charge hadn't been paid out until August. Is this the basis for equitable tolling? Is that what you're arguing here? And did you raise that with the court below? We stated that there should be a new 60-day time period. We did not state below that there should be equitable tolling. We did state here that tolling might be an appropriate mechanism as well, and it would be sort of an equitable tolling. When the charge is removed, it would just make sure that a consumer is not tricked into losing their Fair Credit Billing Act rights. There's no reason why this charge had to be removed while the investigation was ongoing. This is only relevant to 1666, though. That's entirely correct. 1643, this has no relevance for whatsoever. 1666, the argument is that our notice was untimely because it was sent 63 days later, or after the first statement containing any indication of the Western Union charge. Before we leave 1643, how do you deal with the language in Azur and Sovereign Bank that seemed to indicate that the nature of the liability that is at issue in 1643 is limited to the issuer bringing suit against the cardholder, that the cardholder doesn't have liability absent a lawsuit being brought? I see my time's up. May I answer the question? Absolutely. Thank you. Well, in Sovereign Bank, like I was talking about, the claim was by a credit card issuer against a merchant. So there never was even a consumer involved in that lawsuit. And I believe the court's opinion was simply that the credit card issuer is not liable to the merchant. So therefore, the risk of loss would be on the merchant for unauthorized use, which seems reasonable since the merchant should be the one who's checking to make sure the correct person is using a credit card. And I believe Azur Bank has a very similar holding. Again, there was a seven-year time frame when this unauthorized use was occurring. And during that time frame, the bank would have been making payments to the merchants. We talked about the definition of liability, which has some broader implications. The term liability appears in the statute. And we said in Azur that liable means responsible or answerable in law, legally obligated. And we talked about it limiting the issuer's ability to sue the cardholder to recover fraudulent purchases. Correct. And is liability, as the term is used in 1643, limited to those circumstances, or are you arguing that it relates as well to contractual liability, the appearance on the statement? I would tell you the second one. There certainly should not have been any charge on the statement indicating the $657 amount. Bank of America could not have sued my client for this money. He would have had a defense based on 1643. But the Truth in Lending Act also requires, among other things, a statement to be sent that includes the balance owed. Now, my client does not owe this $657 charge, so it should have never appeared on the statement in the first place. I mean, the unauthorized use protection really gets into a number of different sections of the Truth in Lending Act. And unfortunately, Bank of America's actions here didn't comply with them at all when they sought to collect this amount that exceeded the statutory maximum. So it's your position that while we referred to the issuers bringing suit as liability, that that was an example but not exclusive, that being legally obligated includes contractual liability? Yes, that's right. In 1666, on the timing there, how do you get around the language of 1026.13b on the written notice no later than 60 days after the creditor transmitted the first periodic statement reflects the alleged billing error? Isn't this the same billing error? Well, I would say that the ambiguity here is to the charge. Is this the same charge that was initially initiated? We would suggest that once a charge has been removed, there would be no reason for a consumer to think that he needs to submit a statement. Centralized by the facts here where your client admitted that the letter that was sent to him showed that it was just a provisional credit, it wasn't a firm credit? Well, the letter did state that the bank considered the matter resolved in his favor, but that the merchant did have an opportunity to resubmit the charge. So that's certainly correct, Your Honor. But if we also want to look at the record, there was a one-month time frame from when Bank of America found out about this charge back response and when it was transmitted to my client. That's half of his 60-day window right there. If we do not allow for this type of reinstated charge to start a new clock or to toll. Yeah, in fact, you're asking for a start over, right? We think a start over does make the most sense, but tolling would also work. It's just for a situation where a consumer contacts a credit card company by phone initially is the only time this would actually matter. And for unauthorized use, they're allowed to do that. But for instance, if they're just saying, I think that my statement has an incorrect interest amount. The creditor could say, well, I'm sorry, I'll do an investigation on this. I'll take it off of your account for right now. But the FCBA protections have not been treated at that point. And then 60 days later, the charge could be added again. And when a written notice is submitted, Bank of America could say, sorry, you're too late. There's nothing we're going to be able to do for you. And given the position you're espousing, what are the magic words? What if it had been left on the statement and the credit card company said on the phone, don't worry about making payment. I've made a note here that we're going to investigate this and we'll get back to you. Is it at the point when they're told later, maybe day 59, that sorry, we've resolved it, the clock would run again? What is it that triggers the clock restarting? It should be when the charge is reinstated after it had been removed. If it remained on the entire time period, it wouldn't be irrational for a consumer to begin to doubt that perhaps he doesn't owe this money and that he should either seek legal help or take additional steps to try and protect himself. Okay, what if it's removed from the card statement, but the communication by phone or the letter that's sent to the card member says not as here that we consider this resolved, but that we're going to hold this in suspense, you may remain liable, we're going to conduct an investigation, and we'll revert back to you. Is this in response to a notice of billing error? Because, again, I think one of the most important links here is whether the notice is first provided orally or in writing. If it's first provided in writing, then we don't need to worry about this because the protections have already been triggered by the FCDA. You're asking us to adopt the position that there's a restart when something appears again on a credit card statement. So my question to you is, is the triggering event that it becomes a new charge from your perspective when it's removed from the statement, or is it only when it's removed in conjunction with the assertion that this resolves the charge? What if it's removed and the consumer is told, we're just holding this in suspense, presumptively you remain liable, and we will get back to you at the end of our investigation. Is the clock still ticking? I would say that in that situation, it would be far more reasonable to hold that there was just a 160-day time period. But where it's completely removed from the statement and there is not some type of language saying, we're just holding this in suspense, but we do think you are going to be liable. It is the more equitable result, I think, to make sure that consumer does get a time frame to assert these rights. Especially where, as I stated, Bank of America took half of the 60-day time period to just provide notice to the consumer of the chargeback response. During that time frame, they sent him a statement, which again did not include the $657 amount. That's a good segue to get to Mr. Falk. Thank you very much. Good afternoon. May it please the Court. My name is Michael Falk of Reed Smith on behalf of Appellee Bank of America. If I could just go through the facts here. So at the end of June, he has this charge based on what his daughter tells him looks like could be a scam telephone call. And he immediately tries to get it resolved, but he finds that there is a $657 Western Union money transfer that took place that day. He doesn't write, but he calls. And you get ultimately two letters at the end of July, July 29th. One says that we completed our investigation of the $657 charge of disputing and were unable to determine that a billing error occurred. But then the second letter said, please understand that we filed a claim on your behalf and we consider the dispute resolved. The merchant does have the opportunity to review the information, so maybe things are being held in advance. But then on August 18th, the next billing statement, Bank of America reversed the unauthorized charge. And if you are Krieger, don't you believe that the matter has now been fully resolved? You're Mr. Krieger in this situation. You get this on August 18th. You get something at the end of July that maybe says they can go back to the merchant and there may still be a problem, but we're going to consider resolved for now, whatever that means. But now you get the next billing statement three weeks later and it's not there. So what do you think if you're Mr. Krieger? Your Honor, if I'm Mr. Krieger, the answer is no, because the July 29th... You get the statement that it's now reversed. You don't think the matter's been resolved on August 18th? It doesn't matter whether he thinks the matter's resolved or not. The July 29th letter didn't put any time frame on how long it would take for the merchant to resolve the issue. And the letter indicated that it would be reversed on the following statement. So you could come back, how long later? September, October, November and say, you know what, we've now done a further investigation and yeah, we told you in July that it's not on the statement. In fact, it's probably not in September, but now we think it may be. Well, assuming that there had been a written billing notice, Your Honor, then the obligation... You're relying on text at this point, but I'm talking about you then come back in September and say we're reinstating. Doesn't that restart the time? It doesn't restart the time, Your Honor, because the regulation sets forth a reasonable investigation requirement and that reasonable investigation requirement requires you to conduct a reasonable investigation, however long that may take. It may take a month, it may take two months, it may take longer. The post letter on July 29th says we completed our investigation. I mean, you're saying in this man's position, who's not a lawyer, and he gets something that might be equivocal, but then gets a statement that says there's nothing on there, it's been reversed. In fact, he gets an affirmative statement, it's reversed. And then a month later you come back and say, well, we've done some further investigation and we're going to reinstate it. Why doesn't that reinstate your 60-day period? Because, Your Honor, the July 29th letter set forth that a further investigation was still occurring. And from the context of the Fair Credit Billing Act and the ability to bring a claim under that act, it doesn't restart the clock. Mr. Krieger still has the protections under the Fair Credit Billing Act. Time out, time out. What your July 29th says, first letter, we completed, quote, our investigation. The second letter says, please understand that although we filed a claim, we considered your dispute resolved. Then it says the merchant does have the opportunity to review and provide additional documentation to support why they feel the transaction is valid. Should we receive additional information from the merchant, we'll forward relevant documentation to you and let you know if additional information is needed to support your disputes, whatever that means. But it doesn't say that there's necessarily, we're doing a further investigation because the first letter says our investigation is complete. This goes back to the timing of what transpired here factually, Your Honor. And I think this is actually conceded by the appellant here. What happened is, and Your Honor, in initially reciting the facts, referred to the computer issues. The computer issues occurred in June of 2015. Mr. Krieger was on the phone with someone. The only thing he didn't do in June was write, correct? That's correct. And then also in July, there was a second phone call, or two phone calls in July. Yeah, he picks up the phone and he calls. But then you tell him it's, if you say, if he did something wrong, he should have written instead of called. But then you say it's resolved, quote, end quote. Our investigation is complete. And three weeks later, you send out a statement that reverses the charges. What in the world is he to think? Your Honor, I think the letter makes clear that there's still ongoing analysis being done. And if you look at the last bullet of the July 29th letter, it refers to additional information possibly being needed regarding a suspect. I'm taking you through the extents to August 18th. You've now reversed the charge. There's no statement that it's, you know, being investigated. No question mark. It's reversed. At the very least, if you don't restart the time period, aren't you in effect, isn't this a great case for equitable tolling? I disagree, Your Honor, because Mr. Krieger This is not a case for equitable tolling. Your Honor, there is no equitable tolling under the plain language of the statute. You mean courts aren't allowed to look at this and say, wait a minute, there was stuff done here that makes it unfair to say that this particular 60 days has to be affirmatively followed no matter what. The answer to that question, Your Honor, is yes, courts are not allowed to do that. Not allowed. Where does it say that? The plain language of the text says The text of what? The text of the Fair Credit Billing Act, Section 1666, says that written notice must be received by the creditor within 60 days. Written notice received by the creditor within 60 days to trigger obligations of the creditor. Now, again, this gets back to Mr. Krieger is not being But you can't claim in this case that there was any unfair advantage. You knew right away that there was a problem, correct? There was a dispute with respect to this particular amount. He didn't wish to pay. It was an unauthorized crediting of 657 by this outfit that scanned his computer. Well, that's the allegation from Mr. Krieger, and then the bank investigated that with Western Union and made the determination based on the information they received from Western Union that the charge should stand and reinstated the charge and notified Mr. Krieger of the charge being reinstated in September. During the entire month of August, especially after August 18th, did Mr. Krieger have any reason to believe that the matter had not been resolved in his favor? He did because the July 29th letter indicated that it was still on August 18th. He did because the July 29th letter makes reference to the charge being reversed. The next statement that follows is two or three weeks later on August 18th. Why, when there is an intervening statement that does not contain the charge, why doesn't that constitute the kind of break such that the reinstatement of the charge, its appearance again, is the operative billing error? Your Honor, the answer to that is because the regulation sets forth that it's the first periodic statement. When you're doing an investigation, these charges oftentimes get reversed while that investigation is ongoing, and then they're reinstituted once that investigation is completed, which is exactly what happened here. Well, it's the first periodic statement that reflects the alleged billing error, where the typical situation would be where it's continually appearing, and when there's a break in the action, it's not. But in addition, under 1026.13.4, isn't the failure to properly credit the consumer's account, which is what's happening when a disputed charge is then being instituted on the card statement, isn't that a different billing error than the initial billing error under subsection 1, just alerting the company that it's unauthorized from the consumer's perspective? Your Honor, the dispute first occurs after the first billing statement is issued in July of 2015. Mr. Krieger receives that billing statement, and at that time, for the first time, raises a billing dispute. Now, it's conceded he does so orally by telephone, not in writing at that point. Had he wished to raise it as a billing dispute under the Fair Credit Billing Act at that point, he could have easily done so in writing at that point. The earlier call- The question is 60 days from what? We're looking at the from what? And perhaps you could speak to the official interpretation, because at paragraph 13b.1, the official interpretation of this section says, if a creditor has failed to send a periodic statement, the 60-day period runs from when the statement should have been sent. And then it says, once the statement is provided, the consumer has another 60 days to assert any billing errors reflected on it. Doesn't that indicate with the approach that was taken by the agency here, and we give great deference to these official interpretations, that the intent is once there is liability has been asserted by the appearance of something on a statement, that the 60-day period should be running anew? Your Honor is correct that once a statement- from the interpretation that Your Honor just read, there's a 60-day clock that runs, and then a new 60-day clock once the first statement issues. But here there was the first statement that issued, so the 60-day clock runs from that issuance of the first statement. But here it's not just the intervening absence of the statement, it's the actual revocation of the charge on the statement, communicating even more than silence that the consumer is not liable for that charge. Under those circumstances, following with the logic of 13b.1, wouldn't the 60 days need to restart? The 60 days only runs from the first periodic statement, whether it appears in the second statement, the third statement, or a first statement, and then a fourth statement. It runs from the first statement under the clear language of the regulation. Now again, Mr. Krieger still is not being denied his available options under section 1026.12b, or under section 1643, which limit his liability. So there's the difference here between whether he's got the ability to assert an affirmative claim under the Fair Credit Billing Act section 1666, which he's done in this case, and in order to do that, there's a strict requirement that you submit a written notice, and it's not just any written notice, it's a specified written notice. It can't be on a pay stub or it can't be something written on a paycheck, on the check. And the receipt of that written notice by the creditor is what triggers the creditor's obligations under the statute. The creditor doesn't have any obligation under the statute triggered if that written notice isn't provided within the first periodic statement that shows that billing error, which was the July 2015 statement. Now Mr. Krieger still has the right to assert that he doesn't have liability under 1643 or under the code section 1026.12b, and his liability in that case, to the extent that the bank wanted to assert an affirmative claim against Mr. Krieger, would be limited to $50 unless certain requirements had been met. So Mr. Krieger still had the ability to limit his liability to the $50 here. He just can't bring an affirmative claim against Bank of America because he didn't meet the requirement under the statute that says explicitly, with no exceptions, that written notice must be received by the creditor to trigger the creditor's obligations. Which, by the way, the creditor's obligations under the statute, Mr. Krieger's arguing that we ignore the word first in the regulation as it modifies the periodic statement. And then we ignore it and we start over. Even though the really first statement here is the July 2015 statement, ignore the word first because the word first doesn't appear in the statute itself. It appears only in the regulation. But if we were to go by that logic, we would also ignore the word reasonable because the word reasonable doesn't appear in the statute. It appears only in the regulation. I just have two questions just as a follow-up to that. You're using the word first to me. This is the first time the error appeared. But then the error went away and then it appeared again. So your argument would be if I have a billing statement and it keeps appearing and appearing, you have to go back to the first time it appeared. But isn't this the first time it appeared as a lien statement? And that's the billing error, and that's another billing error because you reinstated something that shouldn't have been reinstated. So here, you know, you have, you know, I know we're talking about what first means, but that's a problem. And the other thing I want you to address is your argument about equitable tolling. How do you square that with the Court of Appeals for the Third Circuit's indication in Ramadan v. Chase Manhattan Court 1998 decision that concluded equitable tolling principles apply to Truth in Lending Act claims brought pursuant to Section 1640? So we already have this Court of Appeals finding. You can have equitable tolling in this kind of statutory framework. I see my time is running. Can I finish responding to your questions? You're on our time. You're fine. With regarding to your point about the reinstatement, the very word reinstatement means that it was already stated a first time and now is being stated for a second time. The word reinstatement indicates that it's being stated for a second time. Therefore, the word first is the first statement where the billing error appears. But it's the first time it was reinstated. See, that's really the nuance here. If there was a second statement that issued and it didn't disappear off the statement, that second statement would be the first time that it appeared a second time or first reappearance of it. But the word reinstatement indicates that the very first statement was an earlier statement and it's the same billing error as the Western Union charge that appeared on that first statement. That reinstatement is not the first statement. It's a second statement or some subsequent statement. Why is the nature of that error different in that now it is over the objection of the consumer that this was unauthorized? When it first appeared, the issuer had no information about that. It's taken off. And when it appears again, that is a compound error. That is, at least as alluded by the consumer, the error is not only that it's unauthorized, but that you've put it on there and are refusing to credit the consumer's account. Those are identified as different billing errors under the statute. Your Honor, when it reappears, I guess in September of 2015, that's following the completion of the investigation that would have been required in the first instance had written notice had been provided. The absence of the written notice doesn't give him a new 60-day clock in September. If he had sent in the written notice in July of 2015 when he first received the statement showing the rest from union charge, the bank at that point, the creditor is at that point obligated to do two things. One is to acknowledge the response and then to conduct an investigation. And it doesn't say how long that investigation should take. It could take a month. It could take two months. In this case, it took more than two months. At the conclusion of that investigation, the creditor's obligation is to do one of two things. Either correct what it deems to be a billing error, or if it doesn't deem it to be a billing error, provide some written explanation. That's exactly what transpired. It just took a period of two and a half months. And in the meantime – But after you got the September statement, within 11 days you received an objection, written objection. That's correct, Your Honor. So, isn't a – I mean, you got a case right on point from the 1998 case, Third Circuit, but what you got here, isn't this analogous to like a statute of limitations? It is in a way, Your Honor. And aren't statute of limitations subject to equitable tolling? They are in some circumstances, Your Honor. And why isn't this the paradigm for one of those some circumstances? Because in this case, Your Honor, there was no deception, no intentional deception, and the bank conducted – I'm not saying there was deception. There was an overt statement that is resolved. There was an overt statement that we've completed our investigation, and then there was, three weeks later, a statement that comes out that reverses the charge. Based on what was said in that July letter, which indicated that they were still investigating with Western Union, waiting to receive additional information. But he didn't know that at the time. He probably figured that they're done, that they've chatted with Western Union. They just decided to heck with it. It's 657. It's not a big deal. Let's not make a big fuss about it. You have your charge. You're getting a credit for 657 that was taken off the month before. It's no question marks. Right. And, Your Honor, here's circling back to the point I made a few minutes ago. When he receives the bill, the new bill in September of 2015 with the 657 on it, he's got a right under 1026.12b to say, my exposure here is limited to $50. He didn't do that. Instead, he paid the charge. Are you saying that recovery, the ability to even state a claim under 1643, depends on whether someone has withheld payment on the statement or whether they have, for example, auto pay on and have had their statement paid, that the latter can't recover and the first consumer can't? Your Honor, you cannot recover reimbursement under 1643. This Court's question is clear on that. The reimbursement that we talked about in those cases related to payment for charges that were not disputed for lengthy periods of time. That was retroactive reimbursement on those statements. At issue here is timely notice being given that these were disputed charges, and then payment may or may not be made as to those disputed charges. A consumer, for example, despite the protections provided by the statute, might be afraid that there's going to be a bad credit report that's released. Or perhaps they've signed up for auto pay with their credit card issuer, so they make payment. Could it really be that Congress intended whether or not the payment is made on a credit card statement to resolve the issue of whether there's a claim that can be made when there has been timely notice that it's an unauthorized charge? Your Honor, the answer is yes. Congress intended 1643 as a protection for the cardholder, but not as something that can be used to file an affirmative suit against the cardholder, whether it's for statutory damages, whether it's for reimbursement. This Court has clearly held that it cannot be used for that purpose. It can be used to prevent the cardholder from being firm. Should the cardholder wish not to make the payment, certainly he can do that. We've said there's not a freestanding right to reimbursement under 1643, but as your colleague explained and as the complaint reflects, they brought this count under 1640 alleging violations of 1643. That is that the liability is capped at $50 unless the issuer has complied with the particular obligations that are set forth in 1643, and their allegation is you didn't do that. They're bringing a claim under 1640 for those violations, and they should be allowed to move forward with their claim. What's wrong with that? What's wrong with that, Your Honor, is to make that argument under 1640, you have to rely on there being liability under 1643, and this Court clearly said in both the Sovereign Bank and the Azure cases, Section 1643 imposes liability only upon the cardholder. You need to look only at the language. The language is setting forth what the protections are for the cardholder and his rights. It's not saying what the liability of the card issuer is in any way in Section 1643. But 1640 provides that there's liability for the card issuer if it violates any provision of the section, including the part that covers 1643. 1643 says an issuer can't impose liability on a cardholder without complying with certain requirements. Their allegation is you didn't comply with those requirements, and yet you sought to impose liability on the card member, hence violation, hence claim under 1640. Why isn't that enough to state a claim? If you look at the language of the Azure case, and I think Your Honor was honed in on this at the outset, the imposition of the liability is, and I think this Court used the language, thus limits a card issuer's ability to sue a cardholder. It doesn't say anything about restricting a card issuer's ability to issue a bill with a disputed charge. Why wouldn't liability, I mean, just by the common use of the term, and certainly in a legal document like this, include contractual liability? There is contractual liability. And in order to impose that liability, you do so through the litigation process, by ability to sue a cardholder. How then would we read the official statement, for example, 1026.12b, talks about imposing liability. A card issuer is not required to impose liability on a cardholder for the unauthorized use of a credit card. If the card issuer does not seek to impose liability, the issuer need not conduct any investigation of the cardholder's claim. Reading that provision and interpreting liability as you would suggest to mean only the issuer bringing a lawsuit, there would be no obligation under the statute for the issuer receiving this complaint to conduct an investigation, not at least until it's bringing a lawsuit, right? That's correct, based on the language of the Azure Decision and Sovereign Bank. And how about conditions of liability? It says the issuer has the option not to comply. A card issuer that chooses not to impose any liability on cardholders for unauthorized use need not comply with the disclosure and identification requirements discussed in this section. So your position would be that an issuer doesn't have to comply with the Truth in Lending Act provisions unless it's bringing a lawsuit. It doesn't have to comply with those in connection with actually placing the charge on a statement? Could that really be? Your Honor, I believe you're reading from 1643, or are we reading from the regulation? This is the official statement. This is in 1026.12b. Right. And the response to that, Your Honor, is? That's the CFR provision. It's section of the CFR. It's 12 CFR section 1026.12b. Yes. Correct. So, Your Honor, basically what the regulation and also what section 1643 are saying is that the creditor cannot seek to impose liability greater than $50, cannot go out and sue Mr. Krieger to go collect on the whole $657, if they don't meet these disclosure requirements, if they don't conduct a reasonable investigation. But here now they've got the money. But here now they have the money. So what does he have? How does he get it back? He can't get it back, at least not under the Fair Credit Billing Act section 1666. Let's stick with 1640 and 1643. Under 1643, there's no right to reimbursement under that statute. So he only can get the money back under 1666 if he files something within 60 days. Is that what you're saying? That's correct, Your Honor. The only way. Correct. Even if they act egregiously bad and even if they mislead the person, that's the only possible way he can get the $657 back. Well, if that's the case, Your Honor, there may be other violations of either federal or state law under which he can get reimbursement if there's some egregious conduct. But there's no egregious conduct alleged here, Your Honor. The only thing that's alleged is that they didn't conduct a reasonable investigation, which, by the way, we submit based on the information alone here. That standard is a minimal standard and may and oftentimes does result in a response that a cardholder isn't satisfied with. But that doesn't mean you have a cause of action under 1666 because you don't like the outcome of that process. But if what you have here is akin to a statute of limitations and a statute of limitations can be equitably told and you have a Third Circuit case specifically on point from 1998 that says, yes, it can be told, don't you have to go on to your next point? Your Honor, I'm not sure that this particular statute can be told. It's somewhat similar to a statute of limitations, but it's not the same thing as a statute of limitations. It's imposing obligations. It's not giving Mr. Krieger a right to sue within 60 days. It's imposing obligations on a creditor. Those obligations only are triggered once these specific requirements are met. All right. Your argument really is one, I got the text, the text supports me, and that's it. Well, and also we submitted our papers, Your Honor, that an investigation actually was performed here. Information was submitted by Western Union. On July 29th, the first letter says the investigation is complete. And this ties back to the very first question Your Honor asked this morning when, or this afternoon I should say, when we talked about the sequencing of events. The first phone call occurred in June of 2015. Then on July 29th of 2015, there were two phone calls placed, one by Mr. Krieger to the bank, at which time the bank apparently said, we can't do anything for you. And that first letter that says we've completed our investigation issued at that point. But then the bank later called back Mr. Krieger that very same day and said, we're going to look further into this. For the meantime, we're going to credit your account. And then they issued that second letter indicating that there was further investigation going on. And that's part of the procedure. I'm beating a dead horse and coming around in circles on you. Well, I'll give you 30 seconds to sum up and then we'll get you. Can I just ask on the reasonable investigation point? Sure. You've said that it's reasonable. But what constitutes a reasonable investigation is set out in the official interpretation. Is it your contention that you complied with some or any of the points that are itemized for both 1643 or 1666 as to the types of procedures that constitute a reasonable investigation? Yes, Your Honor. Which ones? For instance, they reviewed the type and amount of purchase in relation to other purchases. There's no secret here. There's one charge at issue. They investigated exactly what the allegations were, the complaint. There was no credit slip here, but they did get from Western Union information providing IP address, home address, e-mail address. Western Union's affirmation that the charge was correct. There was no police report filed here, so that element's tipped off. There was no affidavit of fraud submitted, or at least there's no indication in the record of that. And the bank already received information from the cardholder as to what happened. Once the bank does all that, gets all the information, whether it agrees with Mr. Krieger's interpretation or not, it's up to the bank. And if you look at the Pierce case we cite, it says it's a minimal standard that must be met here. Ultimately, the cardholder doesn't get a right to challenge that ultimate determination. They just need to make sure the creditor went through and conducted that investigation. And if you look at the very record that's attached to the complaint, that demonstrates that they've done that investigation. So what you're saying is the reasonable investigation is just the investigation, and if the results were absurd, you know, where no reasonable bank would have viewed those facts as supporting that it was an authorized charge, the bank is still off the hook. If the bank is not relying on the information obtained in the investigation, then I would agree with you, Your Honor. All right. Thank you very much. Thank you. Mr. Krieger? Thank you, Your Honor. I'd like to just touch on this reason. I have a quick question before you begin. We've spent a lot of time raising questions about equitable tolling. Did you raise equitable tolling below? Again, we did not specifically raise equitable tolling. We suggested that the clock should start anew. I think that equitable tolling is perhaps even more favorable to the bank here, so I don't think that that should limit us because the equitable tolling would just simply give them one 60-day time period, but theoretically we could be asking for a longer time period. So I don't think that there's any prejudice to the bank here if the court considers equitable tolling appropriate as opposed to restarting the clock once the charge is reinstated. There was a lot of talk about whether or not the investor – Sir, that may be true as to your client, but when we're thinking about how this statute should be interpreted, aren't there some important differences between the functioning, the practical functioning of equitable tolling and restarting? That is, within that 60-day window, I would imagine that there are things that happen both on the consumer side in terms of checking if someone in the family might have used the card, looking at the statement, perhaps consulting with counsel, but also on the issuer side, if they choose to conduct an investigation based on the information presented. If there's equitable tolling as of day 59 and then the charge is reinstated with one day left for the cardholder to address the issue, does that serve the purposes of the 60-day window for either one of those parties? I don't believe it does, Your Honor. Again, in our situation, we're kind of in a unique thing where notice was provided the same day. But yeah, in a situation where perhaps the charge is finally removed on day 59 after a lengthy conversation between credit card issuer and consumer, there might be a similar situation where the creditor or the consumer just would not have enough time in order to raise the dispute, which is why we've always asserted that the 60-day clock should be restarted. But tolling, at least in our case, would have the exact same result. Reasonableness of the investigation is not an issue in front of this Court because the first failure to comply with 1643 was simply sending the statement. They received notice in June that there was unauthorized use, and they sent a statement in July. That already failed to comply with 1643 and 1026.12. So we don't need to get into the reasonableness of the investigation. We certainly take the position that parroting a response from Western Union is not necessarily a good faith investigation. And this Court has held in similar cases like the Fair Credit Reporting Act that you need more than just to rely on what a merchant or a furnisher has provided to you as your investigation. But I don't even think that should be at issue here. But one thing we haven't heard of is what type of prejudice – and I see I'm out of time. Andy, one more minute. Thank you, Your Honor. What type of prejudice there would be to Bank of America to allowing Mr. Krieger to assert this written billing error? Because they responded to him in just a matter of days after he did submit the written notice of billing error. They didn't conduct any additional investigation. We haven't heard of any type of prejudice that there would be to Bank of America by allowing the 60-day time period to begin anew or to be told when the charge is removed. And one last point I would just like to make is, Judge Ambrose, you asked, what is the consumer supposed to think when he gets the August statement and the charge is removed? And I would perhaps suggest that this court should look at this situation like they would a fair debt collection case where they analyze the situation from the least sophisticated debtor standard. In this case, as you pointed out, Mr. Krieger is not a lawyer. He would not think that he needs to send in another piece of paper when it appears his entire dispute has already been resolved. For centuries, there's been a maxim that the law doesn't require you to do anything that is useless. And here, Bank of America is essentially saying, Krieger should have done something useless by sending in a piece of paper when it appeared the dispute was already resolved in his favor. Thank you very much, Your Honor. I can go whole cities without ever asking for a transcript. And here I'm asking for three in one day. I would ask that the transcript be prepared for this oral argument and that you split the costs. And really, very, very well done on both sides. Thank you very much, Your Honor. Thank you.